NOT DESIGNATED FOR PUBLICATION

No. 128,570

STATE OF KANSAS,
*Appellee*,

V.

SERVANDO J. MARTINEZ-VAZQUEZ,
*Appellant*.


MEMORANDUM OPINION


Appeal from Douglas District Court; STACEY DONOVAN, judge. Submitted without oral argument. Opinion filed July 2, 2026. Affirmed.


*Dylan J. Pryor*, of Kansas Appellate Defender Office, for appellant.


*Adam T. Carey*, senior assistant district attorney, *Dakota Loomis*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before HILL P.J., ARNOLD-BURGER, J, and ANDREA PURVIS, District Judge, assigned.


HILL, J.: In this direct appeal, we must decide whether the trial court's failure to give a jury unanimity instruction, unrequested by either side, was clear error. It was not. Under the circumstances depicted in this record, we find that Martinez-Vazquez' crime was a single course of conduct and not a series of multiple acts that would call for a unanimity instruction. Thus, we affirm his conviction.

*After his early morning arrival at a young woman's apartment, the defendant refused to leave.*

Servando Martinez-Vazquez and Makenzie Aldrich had dated on and off for several years. In the early morning hours on October 12, 2022, Martinez-Vazquez without permission or invitation, showed up at Aldrich's apartment and would not leave. Aldrich testified that Martinez-Vazquez was banging on her apartment door, which woke her up. Aldrich then got up to see who was at her front door, but when she peered out the peephole through her door, she saw no one. Confused, Aldrich opened the door to find Martinez-Vazquez standing beside the door and he proceeded to walk into her apartment once the door was open.

Aldrich followed Martinez-Vazquez into her apartment and told him that she wanted him to leave. An argument ensued, in which Martinez-Vazquez refused to leave the apartment and when Aldrich told him she was contacting someone to pick him up, Martinez-Vazquez "threatened to beat [Aldrich] up if [she] called anybody to come get him." Aldrich then attempted to use her phone to call someone, but Martinez-Vazquez grabbed her arm to prevent her from using the phone. Aldrich testified that during this struggle for the phone, Martinez-Vazquez put his hand around her throat and pushed her up against the wall.

The two continued arguing, during which Aldrich expressed that Martinez-Vazquez was preventing her from getting to work. Aldrich began backing up when she saw Martinez-Vazquez start to approach her again, which caused her to back into her closet and fall into a laundry basket.

At some point Martinez-Vazquez grabbed Aldrich's phone, because after Aldrich fell into the laundry basket, she asked for her phone so she could call in to work. Martinez-Vazquez gave Aldrich her phone, which she used to text her supervisor that she

2

was out sick. Aldrich then started recording a video on her phone and dropped it into the laundry basket.

The video recording captured Martinez-Vazquez telling Aldrich that she needed to listen to him, and that was part of their new terms and conditions, or she would get smacked around again. Aldrich ended the video recording and started to walk back to her room, but Martinez-Vazquez saw Aldrich's phone and took it because he "didn't trust" Aldrich with it. After taking Aldrich's phone, the two lay down in bed and talked until both eventually fell asleep.

Aldrich woke up before Martinez-Vazquez, saw her phone on the nightstand and retrieved it, and took a picture of Martinez-Vazquez sleeping in her bed before going to sit on the couch in her living room. Aldrich testified that she texted her therapist about the incident with Martinez-Vazquez, expressing that she was scared and did not know what to do. Aldrich testified that at that point Martinez-Vazquez woke up and started yelling her name before coming to the living room. But before he made it to the living room, Aldrich shoved her phone into the couch. Martinez-Vazquez told Aldrich that he did not trust her and "that this was weird, so he was going to leave."

After Martinez-Vazquez left, Aldrich called a friend over to her apartment before Martinez-Vazquez returned. When he returned, Martinez-Vazquez asked Aldrich if she wanted to get food with him, to which she told him she did not. Aldrich's friend then told Martinez-Vazquez to leave, but he remained and tried to convince Aldrich to leave the apartment with him. Aldrich's friend recorded the interaction, which appeared to de-escalate the situation, and Martinez-Vazquez left. After the second interaction with Martinez-Vazquez, Aldrich reported the events to the police.

3

*Martinez-Vazquez is charged and tried for his crimes.*

The State eventually charged Martinez-Vazquez with aggravated domestic battery, a severity level 7 person felony; criminal threat, a severity level 9 person felony; and domestic battery, a class B person misdemeanor.

The case was tried to a jury. The State presented testimony from Aldrich and her clinical therapist, Raven Rajani, as well as Elizabeth Lauridsen, Aldrich's friend who recorded the second interaction with Martinez-Vazquez.

The trial court instructed the jury to consider these three counts:

- Aggravated domestic battery, with the lesser included offenses of domestic battery and simple battery;
- Criminal threat; and,
- Domestic battery, with the lesser included offense of simple battery.

The jury acquitted Martinez-Vazquez of aggravated domestic battery and domestic battery, but found him guilty of criminal threat and that the criminal threat was an act of domestic violence. For Martinez-Vazquez' criminal threat conviction, the sentencing court imposed a suspended 6-month prison sentence with 12 months of probation.

*There is one issue raised in this appeal.*

Even though he did not request a jury unanimity instruction, Martinez-Vazquez argues in this appeal that it was clear error for the court to fail to give such an instruction and asks us to reverse his conviction. Because Martinez-Vazquez did not request an instruction that the jury must be unanimous as to the conduct supporting a conviction for

4

criminal threat, this issue may still be reviewed on appeal, but only under a clear error analysis according to K.S.A. 22-3414(3).

To us, Martinez-Vazquez argues that the conduct underlying the criminal threat convictions involved acts which required a unanimity instruction. He contends that his statements were each motivated by fresh impulses, unconnected by a causal relationship. He argues that his statement that he would "beat [Aldrich] up was in direct response to her asking him to leave and the possibility that she would contact his mother or his new girlfriend to come and get him from her apartment."

The State argues that Martinez-Vazquez' acts were not separate and distinct acts, but a single unitary course of conduct. The State contends that Martinez-Vazquez' conduct involved a singular event of threatening and attacking Aldrich because he wanted Aldrich to listen to him and not "call someone about him being in her home."

*Kansas law requires unanimous jury verdicts.*

The right to a unanimous jury verdict in Kansas is guaranteed by statute. K.S.A. 22-3421; K.S.A. 22-3423(1)(d). In cases where there is a question if the jury verdict was unanimous, we must first determine whether the prosecution is based on multiple acts. These are questions of law and we exercise unlimited review over them. *State v. Foster*, 290 Kan. 696, 713, 233 P.3d 265 (2010).

If a case involves multiple acts, there are two ways to handle the dilemma: choose or instruct. Kansas caselaw says, "either the State must have informed the jury which act to rely upon in its deliberations or the district court must have instructed the jury to agree on the specific criminal act to convict." *Foster*, 290 Kan. at 713. "The failure to elect or instruct is error." 290 Kan. at 713. See *State v. Voyles*, 284 Kan. 239, 244-45, 160 P.3d 794 (2007).

If we decide that an error has occurred, we must then determine whether the error warrants reversal or was harmless. *Foster*, 290 Kan. at 713. Where there has been no objection made at trial, unless the failure to elect or instruct was clearly erroneous, we will not reverse a conviction. See 290 Kan. at 713; K.S.A. 22-3414(3).

*We review some fundamental points of law.*

"'Multiple acts'" are "legally and factually separate incidents that independently satisfy the elements of the charged offense." *State v. De La Torre*, 300 Kan. 591, 598, 331 P.3d 815 (2014).

A multiple acts problem may arise even when the factual details about the multiple incidents are indefinite as to precisely when each occurred or even how many acts occurred. *De La Torre*, 300 Kan. at 598. The failure to elect or instruct when a case involves multiple acts upon which the jury may rely to find the defendant guilty constitutes error. *Voyles*, 284 Kan. at 253.

*Caselaw gives us a method to analyze this question.*

The threshold question is to determine whether the acts here are indeed separate and distinct or were rather part of a single course of conduct. *Voyles*, 284 Kan. at 252. Courts generally employ four factors to determine whether the challenged acts were part of unitary conduct or were instead multiple acts:

6

1.      whether the acts occur at or near the same time;

2.      whether the acts occur at the same location;

3.      whether there is a causal relationship between the acts, in particular whether there was an intervening event; and

4.      whether there is a fresh impulse motivating some of the conduct.

*State v. King*, 297 Kan. 955, 981, 305 P.3d 641 (2013).

If the factors establish a multiple acts issue and no unanimity instruction was given, and the State failed to elect the act, then the reviewing court must determine whether reversal is appropriate. *State v. Smith*, 317 Kan. 130, 136, 526 P.3d 1047 (2023). The test for determining whether reversal is required is whether the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024). In that analysis, the reviewing court looks at the entire record. *King*, 297 Kan. at 983-84.

*Martinez-Vazquez' criminal threats were not multiple acts.*

Martinez-Vazquez' two threats towards Aldrich did not involve multiple acts but formed a single course of conduct. Both threats occurred around the same time and in the same location, at Aldrich's apartment around 4 a.m. And there appears to be no intervening event which occurred between the threats and the motivating conduct—Aldrich asking Martinez-Vazquez to leave. As to the fourth factor—whether a fresh impulse motivated some of the conduct—it appears that both threats were motivated by Martinez-Vazquez refusing to leave Aldrich's apartment and his apparent anger at her insistence that he leave.

Based on our review of the record, the two acts constituted a single course of conduct and were not each separate and distinct acts. The two acts occurred at or near the

7

same time, at the same location, were not separated by intervening acts, and were all motivated by the same impulse. Thus, we hold that this case does not present a multiple acts problem requiring a unanimity instruction.

There is no clear error here.

Affirmed.